ATTORNEY GENERAL (*ex rel.* SPALDING & a.) *v.* NASHUA.

If a city accepts a gift of money for the erection of a public library building, made on condition that the city shall provide a suitable lot and that the location shall be selected by a committee previously appointed for a similar purpose, the powers of the committee to select a lot are not limited by the terms of their original appointment, but depend on the contract made by the donors in offering and the city in accepting the gift.

BILL IN EQUITY, for the specific performance of a contract and the execution of a trust. Facts found by the court. The defendants' ordinances provide that " there shall be, within the city of Nashua, a public library, which shall be kept in suitable and convenient rooms located in the central part of the city; " that it shall be managed by a board of trustees consisting of nine members; and that not less than $1,000 shall be annually appropriated and paid to the trustees for the purchase of books and the payment of expenses.

April 26, 1892, in pursuance of votes of the mayor and aldermen and the common council, two aldermen and three councilmen were appointed a committee to act with the trustees of the library in the selection of a lot for a library building. At a special meeting of the city councils, holden September 6, 1892, Mrs. Mary A. Hunt and her daughter presented the following communication, signed by them:

" To the city of Nashua:

" The undersigned hereby agree to give to the city of Nashua the sum of fifty thousand dollars for the erection of a building for the public library, on the following conditions:

" *First.* That the city shall within a reasonable time provide a suitable lot for said building, the location to be selected by the joint committee lately appointed by the city government and the trustees of the public library for a similar purpose.

" *Second.* Said building shall be erected under the supervision, direction, and control of the trustees of the public library, who

shall have the care and expenditure of said fund, and shall have power to appoint a building committee and any other committees they may think necessary, and also shall have authority to employ an architect, and to make contracts in the name of the city for the expenditure of said fifty thousand dollars for the purpose designed.

" *Third.* This gift shall be considered as a memorial of the late John M. Hunt, which shall be suitably recognized in or about said building.

" Sept. 2, 1892."

The city councils on the same day took action thereon, as stated in the opinion. Soon afterwards Mrs. and Miss Hunt paid to the city the $50,000. September 30, 1892, the joint special committee above mentioned, — three trustees of the library acting for the board by their appointment, — voted " that this committee approve the Greeley lot for the library building, and select the same, provided it can be had for a sum not exceeding $35,000." The five members of the committee appointed by the mayor and aldermen and common council reported the action of the committee to those bodies, and the report was accepted; but they failed to take action for obtaining the lot. The lot can be purchased at a cost of $35,000. It is not at the centre of population; and the defendants offer to prove that it is not " in a central part of the city " within the meaning of the ordinance, and so is not " a suitable lot " within the meaning of Mrs. and Miss Hunt's communication.

*Robert M. Wallace* and *Charles W. Hoitt*, for the plaintiff.

*Charles H. Burns* and *Charles J. Hamblett*, for the defendants.

CHASE, J. By the communication of September 2, 1892, Mrs. Hunt and her daughter proposed to give to the city of Nashua fifty thousand dollars for the erection of a building for the public library, on the following among other conditions: That the city should, within a reasonable time, provide a suitable lot for the building, to be selected by the joint committee appointed by the city government and the trustees of the library for a similar purpose. Upon its receipt, the city councils passed the following joint resolution: " Resolved, by the mayor and aldermen and common council of the city of Nashua in city councils assembled, as follows: That the city of Nashua hereby accept the gift of $50,000 from Mrs. Mary A. Hunt and Miss Mary E. Hunt for a public library building on terms proposed in a communication to the city councils of date Sept. 2d, 1892." They also passed a concurrent resolution conveying to the donors " the unanimous expression of their high appreciation " of the generous gift, and stating that it " is more highly valued from the fact that it

comes to the city free from embarrassing conditions, and can be made available without unnecessary delay." Soon afterwards the donors paid the $50,000 to the city, and the money is now in its treasury.

These acts constituted a valid executed gift of the money to the city in trust for the benefit of its inhabitants. The city was authorized to be trustee of such a gift. P. S., *c.* 40, *s.* 5 ; *Sargent* v. *Cornish*, 54 N. H. 18. It is not unusual to attach conditions to such gifts (*Sargent* v. *Cornish*, *supra*, *Cary Library* v. *Bliss*, 151 Mass. 364), a fact that must have been well known to the legislature when they granted the authority. The use of general terms in granting the authority, under the circumstances, shows an intention not to limit it to unconditional gifts, but to make it sufficiently comprehensive to enable towns to comply with reasonable conditions imposed upon gifts.

The city, by accepting the gift of Mrs. Hunt and her daughter, agreed to perform the conditions attached to it by them. *Burbank* v. *Pillsbury*, 48 N. H. 475 ; *Emerson* v. *Mooney*, 50 N. H. 315 ; *Winnipesaukee Camp-Meeting Association* v. *Gordon*, 63 N. H. 505 ; *Cary Library* v. *Bliss*, 151 Mass. 364, 375. There can be no question of its power to make this contract. " Towns may . . . grant and vote such sums of money as they shall judge necessary . . . to establish and maintain public libraries and reading-rooms for the free use of all the inhabitants of the town." P. S., *c.* 40, *s.* 4. Buildings are necessary for the storage and preservation of the books and papers of public libraries, and for the accommodation of their guardians and patrons : libraries cannot exist without suitable buildings for such purposes. Authority to establish and maintain them necessarily includes authority to provide such buildings, and land upon which to erect them. But towns are not limited to taxation of their inhabitants as a means of providing for the public necessities. They may accept gifts made to them for such purposes, and provide, by taxation, the additional money needed. *Kelley* v. *Kennard*, 60 N. H. 1 ; *Holt* v. *Antrim*, 64 N. H. 284, 288. The city of Nashua had power to supplement the Hunt gift by furnishing a suitable lot on which to erect the library building proposed by the terms of the gift. The city's undertaking was not impossible or impracticable. If it could not obtain the lot by agreement with the owners, it could take it by the exercise of the right of eminent domain. P. S., *c.* 40, *s.* 6. It had power to obtain a lot at a reasonable price, whether the owners were willing to sell or not.

A condition of the gift was, that the lot should be selected by the joint committee previously appointed by the city councils and trustees of the library to select a site for a public library building. The acceptance of the gift bound the city to the performance of this condition the same as to the performance of other conditions.

The question is, not whether the votes of the city councils on April 26, 1892, appointing the committee, were sufficiently broad to authorize the committee to select a lot without subsequent approval of the councils, but what is the effect of the contract entered into between the donors and the city on September 6. When the city entered into this contract, it abandoned the independent action contemplated by the votes of April 26. By the contract, the city and the donors jointly undertook to provide a library building. While the donors could not compel the city to accept the gift with the conditions attached to it, the city could not compel the donors to make the gift without the conditions. The only way in which their common purpose could be accomplished was by their mutual agreement. It was not unreasonable that the donors should have a voice in determining the location of the building which their bounty was to erect. They might have determined it absolutely, as, for example, that it should be upon the Greeley lot; and if the city had accepted the gift subject to that condition, it would thereby have located the building and bound itself to procure that lot. But the donors did not undertake thus to fix the location. They proposed that the committee appointed by the city authorities should select the location, and the city agreed to the proposition. In selecting a lot the committee did not act for the city under the vote of the city councils, but for the donors and the city, in execution of the contract. The donors and the city are both bound by the committee's selection.

The city ordinance provides that the library shall be located in a central part of the city, and the defendants offer to prove that the lot selected by the committee is not so located. They do not claim that the ordinance required the location to be at the geographical centre of the city, nor at the exact centre of population. The geographical centre may, and probably does, differ from the centre of population, and the latter varies from year to year as the city grows in one direction or another. Exact equality of accommodation to all the inhabitants is not possible. Some will be obliged to go a longer distance, or over a more difficult or less desirable way, to reach the library than others. All that can be attained is reasonable equality. The ordinance is only an expression of what would be implied without it. The library, being public, should be located so as to accommodate with reasonable equality those who are entitled to its use. No other location would be suitable. The committee was charged with the duty of selecting a suitable lot, that is, a lot that should be suitable in size, form, character, surroundings, location, and all other respects. No complaint is made concerning the lot selected, except in respect to location. It is not suggested that the committee did not act in good faith. The city government and the trustees of the library were represented upon it: a committee

thus constituted is certainly as capable of intelligently deciding the question as any committee or tribunal that can be named. No sufficient reason is suggested as ground for disturbing its action.

The lot can be purchased for the price named in the report of the committee. If this price is unreasonable, the city can obtain it for a reasonable price by taking the course provided by s. 6, c. 40, P. S., as before stated.

*Case discharged.*

WALLACE, J., did not sit: the others concurred.